Daniel L. Bonnett (AZ#014127)
Michael M. Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| William McGhee, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>J.E.T. Limousines & Transportation, LLC; Arizona Commercial Transportation Services, LLC; Transportation Inc; Salt River Tubing & Recreation, Inc.; William Jinks and Jane Doe Jinks, a married couple; Mary Ann Cleary and John Doe Cleary, a married couple; and Does 1-5.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT** |

1.    This class action and collective action complaint seeks to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Arizona Wage Act, A.R.S § 23-350, et seq. ("AWA"), the Arizona Minimum Wage Act, A.R.S. § 23-362, et seq. ("AMWA"), and the Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-371, et seq., on behalf Plaintiff and similarly situated persons who work or have worked for Defendants as "chauffeur" drivers (collectively, "Class Members" or "Drivers").

2.    Defendants are privately owned companies operating in Arizona and its

owners and officers (collectively referred to herein as "JET Limousine" or "Defendants").

3.    Defendant business entities are owned and operated by related individuals for a common business purpose: providing chauffeured transportation services to Defendants' customers.

4.    To accomplish its business purpose, Defendants employ "chauffeur" drivers who transport Defendants' customers in Defendants' vehicles.

5.    Throughout the relevant timeframe, Defendants have operated in Maricopa County, Arizona.

6.    Plaintiff and Class Members are current and former employees of Defendants who work or have worked for Defendants as chauffeur drivers.

7.    For at least three years prior to the filing of this Complaint, Defendants knowingly and willfully failed to compensate Plaintiff and Class Members statutorily required overtime wages in violation of the FLSA.

8.    For at least three years prior to the filing of this Complaint, Defendants knowingly and willfully failed to timely pay overtime and straight-time wages in violation of the AWA.

9.    On information and belief, Defendants' failure to pay required overtime and straight-time wages has been a continuing course of conduct for longer than three years prior to the filing of the Complaint.

10.    For at least three years prior to the filing of this Complaint, Defendants knowingly and willfully failed to maintain payroll records for Plaintiff and Class Members as required by the FLSA and the AMWA.

11.    On information and belief, Defendants' failure to maintain required payroll records for Plaintiff and Class Members has been a continuing course of conduct for longer than three years prior to the filing of the Complaint.

12.    Because Defendants failed to maintain required records of work time under the AMWA, Plaintiff and Class Members are entitled to a rebuttable presumption that Defendants failed to pay at least the required minimum wage for all worked as required by

the AMWA (A.R.S. 23-364(D)).

13.   For at least three years prior to the filing of this Complaint, Defendants knowingly and willfully failed to provide Plaintiff and Class Members statutorily required paid sick leave and information regarding earned, available, and used sick leave with each pay statement in violation of A.R.S. § 23-372 & A.R.S. § 23-375.

14.   Plaintiff seeks unpaid overtime compensation, liquidated damages, interest, costs, and attorneys' fees under the FLSA (29 U.S.C. §§ 207, 216(b)).

15.   Plaintiff asserts his FLSA claim individually and on behalf of other similarly situated persons under the collective action provisions of the FLSA, 29 U.S.C. § 216(b).

16.   Plaintiff seeks compensation for all hours worked, including unpaid straight time and overtime compensation, treble damages, attorneys' fees, and costs under the AWA (A.R.S. §§ 23-351, 23-355).

17.   Plaintiff seeks unpaid minimum wages, interest, double damages, and attorneys' fees and costs pursuant to the AMWA (A.R.S. § 23-363, 23-364).

18.   Plaintiff seeks applicable civil penalties for failure to maintain required records of hours worked under the AMWA (A.R.S. § 23-364(F)).

19.   Plaintiff seeks injunctive and equitable relief to require Defendants to maintain records of hours worked as required by the AMWA and applicable regulations (A.R.S. § 23-364(D); Ariz. Admin. Code R20-5-1210).

20.   Plaintiff seeks unpaid earned sick time, interest, double damages, and attorneys' fees and costs pursuant to A.R.S. § 23-372 & A.R.S. § 23-364.

21.   Plaintiff seeks injunctive and equitable relief to require Defendants to provide statutorily required notice to employees regarding earned paid sick time at commencement of employment and to include the required earned paid sick time amounts on or in an attachment to Plaintiff and Class Members' regular paychecks under A.R.S. § 23-375(A), (B) & (C).

22.   Plaintiff asserts his Arizona state law claims individually and on behalf of other similarly situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**JURISDICTION AND VENUE**

23.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the FLSA.

24.     This Court has subject matter jurisdiction over Plaintiff's Arizona wage claims pursuant to 28 U.S.C. § 1367 because these claims are related to Plaintiff's FLSA claims.

25.     This Court has subject matter jurisdiction over Plaintiff's earned paid sick time claims because these claims arise out of the same common nucleus of facts giving rise to Plaintiff's FLSA, AWA, and AMWA claims.

26.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(1) because multiple Defendants reside in this District for venue purposes and/or are subject to the Court's personal jurisdiction in that Defendants have substantial contacts with and conduct business in this District.

27.     Venue is also proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred in this District.

**PARTIES**

28.     Plaintiff William McGhee is a resident of Maricopa County, Arizona.

29.     Plaintiff McGhee has worked as a chauffeur driver for Defendants in Arizona from approximately October 2023 to the present.

30.     At all relevant times, Plaintiff was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e)(1), A.R.S. §§ 23-350(2), 23-362(A) & 23-371(F).

31.     Defendants J.E.T Limousines & Transportation, LLC and Arizona Commercial Transportation Services, LLC are limited liability companies organized under the laws of Arizona.

32.     Defendants Transportation Inc and Salt River Tubing & Recreation, Inc. are corporations organized under the laws of Arizona.

33.     Defendants J.E.T Limousines & Transportation, LLC, Arizona Commercial Transportation Services, LLC, and Transportation Inc have the same principal place of business: 1737 E. Washington Street, Phoenix, Arizona 85034.

34.     At all relevant times, Defendants J.E.T Limousines & Transportation, LLC, Arizona Commercial Transportation Services, LLC, and Transportation Inc were an "employer" of Plaintiff and Class Members under 29 U.S.C. § 203(d), A.R.S. §§ 23-350(3), 23-362(B), 23-371(G).

35.     Defendant William Jinks is the owner of Defendant business entities.

36.     Upon information and belief, Defendant Cleary is the mother Defendant Jinks, a member of Defendant J.E.T. Limousines & Transportation, LLC, and an officer/manager of Defendants' business operations.

37.     Defendants Jinks and Cleary are both members of Defendant J.E.T. Limousines & Transportation, LLC.

38.     Defendant Jinks is the Manager of Defendant Arizona Commercial Transportation Services, LLC.

39.     Defendant Salt River Tubing & Recreation is a member of Defendant Arizona Commercial Transportation Services, LLC.

40.     Defendant Jinks is the Director, President, Secretary, Treasurer and only shareholder of Defendant Salt River Tubing & Recreation, Inc.

41.     Defendant Jinks is the CEO and Director of Defendant Transportation Inc.

42.     Each of the business entities operate from the same physical address: 1737 E. Washington St., Phoenix AZ 85034.

43.     Defendant DOES 1 through 5 are the member-owners, shareholders, and/or managers of the Defendant business entities and/or officers of the businesses that operate as JET Limousine.

44.     The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 5 are unknown to Plaintiff who therefore joins the DOE Defendants by fictitious names until such time as their true identity is determined. Plaintiff

will amend this Complaint to state their true names and capacities when they have been ascertained.

45.    Upon information and belief, Defendants each exercised operational control over Plaintiff, Class Members, and Defendants' business operations to be considered an "employer" of Plaintiff and Class Members under 29 U.S.C. § 203(d), A.R.S. § 23-362(B), A.R.S. § 23-350(3), and A.R.S. 23-371(G), including, among other things, supervision of and/or assignment of work to Plaintiff and Class Members, determining and enforcing employee policies and standards, determination of Defendants' compensation policies and structure, and control over scheduling, hiring and firing of employees, payment of employees, vehicle purchases, and the contracts with third parties that form a substantial part of the work performed by Plaintiff and Class Members.

46.    Defendants operated as a single enterprise within the meaning of 29 U.S.C. § 203(r)(1).

47.    Upon information and belief, Defendants each grossed more than $500,000 in each of the last three years, individually and collectively.

48.    All actions and omissions described in this Complaint were made by Defendants directly or through their supervisory employees and agents.

49.    Defendants were and are as a matter of law Plaintiff's "employer" and the "employer" of proposed Class Members under the FLSA, AWA, AMWA, and A.R.S. § 23-371(G). Alternatively, each Defendant is a joint employer of Plaintiff and proposed Class Members with one or more of the other Defendants.

50.    Each Defendant is directly, jointly, and severally liable for the unpaid wages and damages as alleged herein.

**COLLECTTIVE ACTION AND CLASS ACTION ALLEGATIONS**

51.    Plaintiff brings Count I pursuant to the FLSA, 20 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who work or have worked for Defendants as chauffeur drivers within the last three years preceding the filing of the initial Complaint and who elect to opt-in to this action.

52.    The proposed FLSA Collective includes:

**All current and former employees of Defendants who performed chauffeur services at any time from three (3) years prior to the commencement of this lawsuit through the date of judgment ("FLSA Collective").**

53.    Plaintiff seeks permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all current and former employees of Defendants who performed chauffeur services at any time during the three (3) years prior to the filing of this action through the date of any order permitting issuance of such notice.

54.    Counts II, III, and IV are properly maintainable as a class action under the Federal Rules of Civil Procedure.

55.    The Rule 23 Class includes:

**All current and former employees of Defendants who performed chauffeur services in Arizona at any time within the maximum applicable statute of limitations preceding the commencement of this lawsuit through the date of judgment ("Rule 23 Class").**

56.    The FLSA Collective Members and Rule 23 Class Members are referred to herein collectively as "Class Members."

57.    The proposed Rule 23 Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 75 members of the proposed Rule 23 Class.

58.    There are questions of law and fact common to Rule 23 Class Members that predominate over any questions solely affecting individual members of the Class, including but limited to:

a.    Whether one or all of the Defendants were Plaintiff's and Rule 23 Class Members' employers;

b.    Whether one or all of Defendants were required to and failed to pay Plaintiff and Rule 23 Class Members for all hours worked, including unpaid straight

6

time

c. Whether one or all of Defendants were required to and failed to pay Plaintiff and Rule 23 Class Members overtime compensation for all hours worked in excess of 40 hours per week;

d. Whether one or all of Defendants failed to pay Plaintiff and Rule 23 Class Members required minimum wages;

e. Whether one or all Defendants failed to provide Plaintiff and Class Members required earned paid sick time;

f. Whether one or all of Defendants failed to keep and maintain records of hours worked by Plaintiff and Class Members as required by state and federal law;

g. Whether one or all of Defendants failed to provide Plaintiff and Class Members notice of accrued, available and used sick time as required by Arizona law;

h. The number of hours for which payments to Plaintiff and Rule 23 Class Members were intended to provide compensation;

i. The nature and extent of Plaintiff's and Rule 23 Class Members' injuries and the appropriate measure of damages, equitable and injunctive relief;

j. Whether certain exemptions to the FLSA's overtime requirements apply to Plaintiff and Rule 23 Class Members and the extent of such exemptions, and

k. Whether Defendants have been unjustly enriched by failing to pay Plaintiff and Class Members for work they completed.

59.    The claims of Plaintiff are typical of the claims of the Class he seeks to represent. Plaintiff and Rule 23 Class Members work or have worked for Defendants, performed the same or substantially similar job duties, and have been subjected to common practices, policies, procedures, protocols, and plans of failing to maintain payroll records of all hours worked as required by Arizona and federal law, failing to pay straight time for all hours worked, failing to pay overtime to employees in workweeks wherein employees worked more than 40 hours, and failing to provide and track available and used paid sick

leave at statutorily required accrual schedules.

60.     Plaintiff and Class Members each worked for Defendants in Arizona.

61.     Defendants acted or refused to act on grounds generally applicable to the Rule 23 Class Members as a whole by engaging in the same violations of law with respect to the Class Members, thereby making any final relief appropriate with respect to the Class as a whole.

62.     Plaintiff will fairly and adequately protect the interests of the Class and do not have interests antagonistic to the Class.

63.     Plaintiff has retained counsel competent and experienced in complex wage and hour litigation and class action litigation.

64.     The Rule 23 Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation such as the instant case where individual workers lack the financial resources to vigorously prosecute the lawsuit in federal court against an employer with substantially greater resources. Although the relative damages suffered by individual members of the Class are not *de minimis*, such individual damages are relatively small compared to the expense and burden of individual prosecution of this litigation.

66.     Furthermore, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' business practices and policies.

67.     Plaintiff and the Rule 23 Class Members have been equally affected by Defendants' failure to pay proper wages and maintain required payroll records.

68.     Rule 23 Class Members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

**FACTUAL ALLEGATIONS**

**Defendants' Business**

69. Defendants advertise as providing "luxury" transportation services.

70. On information and belief, during the relevant time period, Defendants have had a fleet of over 90 vehicles.

71. Defendants' vehicle fleet includes sedans such as the Cadillac XTS, Lincoln Continental, Lucid Air, Cadillac Lyriq, Mercedes Maybach, BMW 740i (which seat up to 4 to 5 passengers including the driver) and SUVs such as the Cadilac Escalade, Lincoln Navigator L, Yukon Denali XL (which seat up to 7 passengers including the driver). Upon information and belief, Plaintiff and Class Members drove such vehicles in every workweek while employed by Defendants.

72. Defendants' fleet also includes vans, limousines, shuttle buses, and full-size coach buses.

73. Defendants' services include, *inter alia*, fixed routes, local charters, shuttles, and point to point ground transportation for groups and individuals.

74. During the relevant time period, Plaintiff and Class Members (collectively, "Drivers") drove a variety of vehicles in any given workweek.

75. Defendants offer transportation services on a prearranged basis.

76. The vast majority, if not all, of the trips driven by Drivers are prearranged by Defendants.

77. The amounts charged to Defendants' customers are determined in advance by Defendants on a flat-rate or hourly basis.

78. Upon information, Defendants partner with other transportation companies referred to as "affiliates." Through "affiliate networks," Defendants offer transportation services across the United States.

79. In addition and upon further information, Defendants perform transportation services in Arizona on behalf of other "affiliate" transportation companies.

80. Upon information and belief, Defendants also provide transportation services pursuant to contracts, including other businesses including fixed route employee shuttles at corporate campuses.

**Drivers' Job Duties**

81.    Drivers' main job duty was and is transporting Defendants' customers in Defendants' vehicles.

82.    In addition to transporting Defendants' customers, Drivers' job duties include, among other things:

a.    Responding to dispatch via phone or text after dispatch contacts Drivers two hours before the Driver's first scheduled pickup of the day to confirm the Driver's intent to arrive at Defendants' business location prior to the scheduled passenger pickup time;

b.    arriving at Defendants' location in time to complete pre-trip work in advance of traveling to the first pickup location of the day;

c.    checking-out or signing out vehicles at Defendants' location at the beginning of their workday;

d.    retrieving items used during work time (e.g., keys, passenger signs, water);

e.    performing pre-trip inspections, including determining whether vehicle is clean, checking fluid levels, belts, tires, air conditioning/heating, fuel level, lights, and other items relevant to the safe operation of the vehicle;

f.    completing inspection reports on software applications;

g.    traveling to assigned customer pick-up locations;

h.    waiting for passengers;

i.    entering vehicle and ride information in software applications, including when the Driver is "en route" to a pickup location, when the Diver is "on location," when a passenger is "on board," and when the passenger has been "dropped";

j.    traveling to Defendant's business location to exchange assigned vehicles in between scheduled trips, which generally require Drivers

to travel to a gas station to fuel the first vehicle, travel back to Defendants' location, perform a post-trip inspection, return the first vehicle's keys to dispatch, obtain the second vehicle's keys, perform a pre-trip inspection of the second vehicle, and travel to their next pickup location;

k.  fueling vehicles before returning them to Defendants' business location;

l.  traveling to Defendants' location after the last trip of the day to return vehicles;

m.  checking-in vehicles;

n.   performing post-trip inspections of the interior and exterior of the vehicle;

o.  reporting any damage or missing items found in post-trip inspections;

p.  cleaning the vehicle, including in between trips and when returning the vehicle;

q.  servicing and cleaning onboard restrooms, including disposal of waste at disposal facilities;

r.  stocking the vehicle with amenities like bottled water;

s.  monitoring flight time arrivals, including before the Driver's first trip of the day if the first trip is picking up a passenger arriving at the airport;

t.  greeting passengers, including, for instance, inside the airport with appropriate signage;

u.  assisting passengers with luggage;

v.  being on-call or stand-by for passenger pickups or other driving duties that may be assigned by dispatch in between other assigned trips;

w.      communicating with managers and dispatchers via telephone, text message, e-mail, or through an "app";

x.      remaining in uniform and with their vehicles or in close proximity to their vehicles; and

y.      arriving at each pick-up location at least 15 minutes early.

83.     Throughout the relevant time period, Plaintiff and Class Members performed services at Defendants' direction and for the benefit of Defendants for which Plaintiff and Class Members reasonably expected to be paid.

84.     The performance of services at the direction of and for the benefit of Defendants created contracts of employment pursuant to which Plaintiff and Class Members were entitled to be paid for all of their working time and in accordance with law in exchange for the services provided to Defendants at Defendants' direction and for the benefit of Defendants.

85.     On information and belief, Plaintiff and Class Members have written employment agreements setting forth their hourly rates of pay.

86.     Plaintiff and Class Members' working time for which they were not and have not been paid include, but is not limited to, all pre-and post-trip activities, and time during which Plaintiff and Class Members were engaged to wait, including, *inter alia*, time between assignments.

87.     Plaintiff and Class Members reasonably expected that all work they performed for Defendants would be tracked and compensated.

88.     In addition, at all relevant times, Plaintiff and Class Members had a reasonable expectation that their employer would comply with the law and pay them all nondiscretionary compensation that Plaintiff and Class Members were entitled to under law.

89.     The work that Defendants directed Plaintiff and Class Members to perform was performed in the interest of and for the benefit of Defendants.

90.     Plaintiff and Class Members, as Defendants' employees, reasonably

expected their employer to pay them for their labor and work performed at Defendants' direction and for Defendants' benefit.

91.    Drivers are relatively low wage employees who were not volunteering their services to Defendants; rather, Plaintiff and Class Members reasonably expected to be paid for all the time that they worked.

92.    Each of the tasks identified above in ¶ 82 constitute the performance of work Defendants directed, suffered or permitted Drivers to perform, and accordingly is work time for which Plaintiff and Class Members were entitled to be paid.

93.    Under Arizona law governing employment contracts, the provisions for payment for all hours worked are terms of the Drivers' contracts of employment with Defendants.

94.    Defendants failed to keep accurate contemporaneous records of all hours worked by Plaintiff and Class Members.

95.    Defendants failed to compensate Plaintiff and Class Members for all hours worked.

96.    The time from when a Driver arrives at Defendants' office until completing all pre-trip tasks and departing the location to the first assigned location typically takes 10 to 30 minutes but can take as long as an hour or more depending on the particular make, model and condition of the vehicle the Driver is assigned to operate.

97.    Drivers are all required to arrive at each pickup location at least 15 minutes ahead of the scheduled passenger pick-up time.

98.    The travel time to any given pick up location can take anywhere from 5 minutes to over an hour and varies depending on the starting point, the pick-up location, traffic, available routes, and road conditions.

99.    It is common for Drivers to have to wait for passengers who do not show up at the scheduled pick-up time.

100.    The travel time back to Defendants' business location (at the end of the day and between trips) also varies depending on the starting point, traffic, available routes,

and road conditions.

101.    It is common for Drivers to have to exchange multiple vehicles during the course of a workday.

102.    For instance, the first scheduled trip may require a sedan, the second trip an SUV, the third trip a van, etc.

103.    Drivers are required to follow the check-in and check-out procedures each time they exchange vehicles during the day.

104.    Drivers may be required to refuel vehicles throughout the day, including in between trips as needed, and are required to fuel vehicles before returning the vehicle to a Defendants' business location when swapping vehicles during the workday.

105.    Drivers often clean vehicles in between trips.

106.    Drivers also have to restock the vehicle with amenities (like bottled water) in between trips.

107.    Drivers are required to return the vehicle to Defendants' business location with a full tank of fuel.

108.    Prior to returning a vehicle, Drivers are required to stop at a gas station to refuel the vehicle. This usually takes from 5 to 30 minutes depending on the type of vehicle, fuel level, and other factors, like whether Drivers have to wait for an available gas pump.

109.    Certain vehicles may also require refilling of Diesel Exhaust Fluid (DEF).

110.    When Drivers return to Defendants' business location, each time they perform required post-trip duties, including, among other things, cleaning the vehicle, inspecting the vehicle for damage and lost items, and returning keys to dispatch.

111.    Each day, post-trip duties, including refueling, can take anywhere from 20 minutes to an hour or more.

112.    Drivers' workdays begin when they first arrive at the Defendants' business location to check out a vehicle and perform pre-trip duties and end when they arrive back at Defendants' business location at the end of the day and complete all post-trip duties.

113.    The work performed each workday in addition to transporting passengers can be up to multiple hours per day, resulting in substantial untracked and unpaid hours each workweek, which varies depending on the number of trips, locations, waiting time, number of different vehicles a Driver was assigned, etc.

**Defendants' Failure to Keep Records of Hours Worked**

114.    During the relevant timeframe, Defendants did not track hours worked by Drivers for purposes of ensuring Drivers were paid at least the minimum wage for all hours worked or for determining Drivers' regular hourly rate or premium rate of pay, including with respect to the tasks identified above in ¶ 82.

115.    For employees subject to minimum wage and overtime provisions of the FLSA, the FLSA requires employers to keep records of, *inter alia*, employees' hours worked each workday and total hours worked each workweek; the employees' regular hourly rate of pay for any workweek in which overtime compensation is due; the total daily or weekly straight-time earnings or wages due for hours worked during the work-day or workweek; and total premium pay for overtime hours. 28 U.S.C. § 211(c); 29 C.F.R. § 516.2.

116.    Defendants did not maintain records of Drivers' hours worked each workday and total hours worked each workweek; Drivers' regular hourly rate of pay for any workweek in which straight time and/or overtime compensation is due; the total daily or weekly straight-time earnings or wages due for all hours worked during the workday or workweek; and total premium pay for overtime hours.

117.    Arizona law provides that "Employers shall maintain payroll records showing the hours worked for each day worked…" A.R.S. § 23-364(D).

118.    Defendants did not maintain payroll records showing hours worked for Plaintiff and Class Members as required by A.R.S. § 23-364(D) and related regulations.

**The Failure to Pay Straight Time, Overtime, & Minimum Wages**

119.    Plaintiff and Class Members regularly and consistently worked more than 40 hours per week.

15

120.    By way of example only, Plaintiff McGhee worked more than 40 hours in in the workweeks ending April 30, 2024, May 28, 2024, June 11, 2024, and October 22, 2024 but was not paid overtime wages at the required premium hourly rate of pay. Plaintiff was not paid all wages he was due for all hours worked in these and all other weeks.

121.    Despite no applicable exemption from the overtime requirements of the FLSA, Defendants failed to compensate Plaintiff and Class Members for overtime in workweeks in which Plaintiff and Class Members worked more than 40 hours.

122.    At no point during the three years preceding the filing of this lawsuit did Defendants pay Plaintiff or Class Members any overtime compensation.

123.    Defendants are required, and have always been required, to pay Drivers working in Arizona no less than the applicable minimum wage under Arizona law for all hours worked.

124.    Pursuant to Arizona law, Defendants' failure to "maintain payroll records showing the hours worked for each day worked… shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate[.]" A.R.S. § 23-364(D). In other words, Defendants' failure to maintain required payroll records as alleged herein places the burden on Defendants to establish that Plaintiff and the proposed Rule 23 Class Members working in Arizona during the relevant timeframe were paid no less than the required Arizona minimum wage for all hours worked in Arizona.

125.    On information and belief, when considering the untracked, uncompensated worktime as set forth in ¶ 82 and in light of the presumption set forth above in some workweeks during the relevant time frame, Defendants failed to pay Plaintiff and Class Members working in Arizona at least the applicable minimum wage for each hour worked.

126.    Defendants failed to pay compensation due to Plaintiff and Class Members working in Arizona for all hours worked and for which Plaintiff and Class Members reasonably expected to be compensated.

127.    Plaintiff and Class Members have been victims of Defendants' common

policy and plan that has violated their rights under the FLSA and state law by requiring them to work in excess of 40 hours per week without overtime compensation, denying them wages for all hours worked, including straight time and overtime compensation for all overtime hours worked, and failing to accrue and provide Plaintiff and Class Members with earned paid sick time as required by statute.

128.   At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

129.   All the work performed by Plaintiff and Class Members was assigned by Defendants and/or Defendants were aware of and suffered and permitted all work including overtime and the untracked, uncompensated work identified in ¶ 82.

130.   As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA and Arizona wage laws. Defendants' policy and pattern or practice includes but is not limited to: willfully failing to record all of the time that its employees, including Plaintiff and Class Members, worked for the benefit of Defendants; willfully failing to keep accurate payroll records as required by the FLSA and Arizona law; and willfully failing to pay its employees, including Plaintiff and Class Members, all wages due at the statutorily-required rates of pay, including straight time and overtime wages, not less than the applicable minimum wage for each hour worked, and failing to accrue and provide Plaintiff and Class Members with earned paid sick time as required by statute.

131.   Defendants were or should have been aware that the FLSA and Arizona law required them to accurately track all hours worked by Drivers and pay Plaintiff and Class Members premium overtime pay for all hours worked in excess of 40 hours per workweek and wages at not less than the required minimum rates for all hours worked. Defendants' failure to pay Plaintiff and Class Members overtime wages for their work in excess of 40 hours per workweek and at least the required minimum wage for all hours worked was willful, intentional, and not in good faith.

132.   Defendants were or should have been aware that Arizona law required them

to maintain payroll records for Drivers and pay Plaintiff and Class Members the applicable minimum wages for all hours worked. Defendants' failure to maintain such records and pay Plaintiff and Class Members minimum wages was willful, intentional, and not in good faith.

133.    Defendants' unlawful conduct has been widespread, continuous, repeated, and consistent.

## CAUSES OF ACTION
### COUNT I
**Failure to Pay Overtime in Violation of the FLSA**

**(On behalf of Plaintiff and FLSA Collective Members)**

134.    Plaintiff re-alleges and incorporate by reference all allegations in all preceding paragraphs.

135.    Plaintiff and members of the FLSA Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

136.    In workweeks in which Plaintiff and the FLSA Collective members worked more than 40 hours, Defendants willfully failed to compensate Plaintiff and FLSA Collective members for all of the time worked in excess of 40 hours and at a rate of at least 1 and ½ times their regular hourly rate in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

137.    Defendants failed to make a good faith effort to comply with the FLSA with respect to its recordkeeping obligations and required compensation to Plaintiff and the FLSA Collective.

138.    Because Defendants' violations of the FLSA were intentional, willful, and repeated, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

139.    As a consequence of the willful underpayment of wages alleged above, Plaintiff and FLSA Collective members have incurred damages and Defendants are each indebted to them, jointly and severally, in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

140.    Plaintiff has expressed consent to make these claims against the Defendants by filing written consent forms pursuant to 29 U.S.C. § 216(b).

## COUNT II

**Failure to Timely Pay Wages in Violation of AWA – A.R.S. § 23-350, et. seq.**

**(On Behalf of Plaintiff and Rule 23 Class Members)**

141.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

142.    Ariz. Rev. Stat. § 23-351 provides in relevant part:

> A. Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees . . .

> C. Each employer, on each of the regular paydays, shall pay to the employees all wages due the employee up to such a date except:

> (3) Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

143.    Ariz. Rev. Stat. § 23-355 provides in relevant part:

> [I]f an employer, in violation of this chapter fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

144.    At all relevant times, Plaintiff and Rule 23 Class Members had contracts of employment with Defendants pursuant to which they had a reasonable expectation that Defendants would timely pay them all nondiscretionary compensation they were entitled to receive for all hours worked.

145.    Without legal justification or good faith dispute, Defendants failed and refused to fully and lawfully compensate Plaintiff and Rule 23 Class Members for all labor and services performed for or on Defendants' behalf for which Plaintiff and Rule 23 Class Members had a reasonable expectation to be paid.

19

146.    Defendants violated Ariz. Rev. Stat. §§ 23-351 & 23-355 by failing to pay Plaintiff and Rule 23 Class Members all nondiscretionary compensation for all hours worked, including unpaid straight time and unpaid overtime.

147.    As a result of Defendants' violations of Ariz. Rev. Stat. §§ 23-351 & 23-255, Plaintiff and Rule 23 Class Members have been harmed, have suffered substantial losses, and have been deprived of the full amount of overtime compensation and straight time compensation for all hours worked to which they were entitled and therefore are entitled to an award of the unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and costs.

## COUNT III

**Minimum Wage & Recordkeeping Violations of the AMWA**

**A.R.S. § 23-362, et seq.**

**(On Behalf of Plaintiff and Rule 23 Class Members)**

148.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

149.    A.R.S. § 23-363 requires employers to "pay employees no less than the minimum wage."

150.    A.R.S. § 23-364(G) provides that an employer who fails to pay required minimum wages "shall be required to pay the employee the balance of the wages…, including interest thereon, and an additional amount equal to twice the underpaid wages[.]"

151.    As a result of Defendants' violation of A.R.S. § 23-363, Plaintiff and Rule 23 Class Members have been harmed, have suffered substantial losses, and have been deprived of compensation to which they were entitled and, therefore, are entitled to an award of the unpaid wages, double the amount of such wages, and prejudgment interest, together with attorneys' fees and costs.

152.    Defendants' violation of A.R.S. § 23-363 was willful.

153.    Pursuant to A.R.S. § 23-364(H), because Defendants' violations were part of a continuing course of conduct, Count III includes all violations of Arizona minimum wage

laws regardless of date of Defendants' failure to pay Plaintiff and Rule 23 Class Members the applicable minimum wage.

154. Pursuant to A.R.S. § 23-364(D), employers are required to maintain payroll records showing the hours worked for each day worked, and the wages and earned paid sick time paid to all employees for a period of four years.

155. Applicable regulations governing the AMWA, including Ariz. Admin. Code R20-5-121, require that employers maintain records of employees' regular hourly rate of pay and an explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, including the amount and nature of each payment; hours worked each workday and total hours worked each workweek; total daily or weekly wages due for hours worked during the workday or workweek; total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments, including, for individual employee records, the dates, amounts, and nature of the items that make up the total additions and deductions; the amount and correct rate or accrual of earned paid sick time available to the employee; the amount of earned paid sick time taken by the employee to date in the applicable year; the amount of pay the employee has received as earned paid sick time and the amount of available, unused paid sick time to date in each applicable year.

156. Defendants violated A.R.S. § 23-64(D) by failing to keep and maintain the required records set forth above.

157. Pursuant to A.R.S. § 23-364(D), for each workweek where Defendants failed to "maintain payroll records showing the hours worked for each day worked," Plaintiff and Rule 23 Class Members are entitled to "a rebuttable presumption that [Defendants] did not pay the required minimum wage rate[.]" A.R.S. § 23-364(D).

158. Under A.R.S. § 23-364(F), an employer who violates recordkeeping requirements is "subject to a civil penalty of at least $250 dollars for a first violation, and at least $1000 dollars for each subsequent or willful violation…"

159. Defendants violated recordkeeping requirements of A.R.S. § 23-364(D) and

applicable regulations are liable to Plaintiff and Class Members for statutory penalties under A.R.S. § 23-364(F).

## COUNT IV

**Accrual and Notice Violations of the Fair Wages and Healthy Families Act**

**A.R.S. § 23-371, et seq.,**

**(On Behalf of Plaintiff and Rule 23 Class Members)**

160.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

161.   Under A.R.S. § 23-372, employees of an employer with 15 or more employees are entitled to accrue a minimum of one hour of earned paid sick time for every 30 hours worked.

162.   Defendants violated A.R.S. § 23-372 by failing to provide Plaintiff and Class Members with at least one hour of earned paid sick time for every 30 hours worked as those hours accrued and carried over from year to year where required.

163.   By way of limited example only, during the pay period ending October 10, 2023, Plaintiff worked more than 30 hours but according to Defendants' records only accrued .77 hours of sick time.

164.   As a result, Plaintiff and Class Members are entitled to the balance of sick time hours owed, unpaid compensation for days absent where sick pay should have been available if properly calculated including interest thereon, and an additional amount equal to twice the underpaid earned sick time, attorneys' fees, and costs of suit under A.R.S. § 23-364(G).

165.   A.R.S. § 23-375(C) requires that the amount of earned paid sick time available to the employee, the amount of earned paid sick time taken by the employee to date in the year, and the amount of pay the employee has received as earned paid sick time in, or on an attachment to, to be recorded in or on an attachment to the employee's regular paycheck.

166.   Defendants violated A.R.S. § 23-375(C) by failing to provide Plaintiff and

Class Members with the information and manner required in that statute.

**COUNT V**

**Unjust Enrichment / Quantum Meruit**

**(On Behalf of Plaintiff and Rule 23 Class Members)**

167.    This claim is pleaded in the alternative to Plaintiff's statutory wage claims.

168.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

169.    Defendants have benefited from labor Plaintiff and Class Members have expended without paying for the completed work, including pre- and post-trip work, and work completed in between scheduled trips.

170.    Defendants have been enriched by not paying their employees for all time Plaintiff and Class Members employees were completing tasks directed to be performed by Defendants, including before, after, and in between scheduled trips and when Drivers were engaged to wait.

171.    Plaintiff and Class Members have been impoverished by Defendants' failure to pay their employees for all time their employees were performing work for the benefit of Defendants and at Defendants' direction.

172.    As described above, there is a connection between Defendants' enrichment and Plaintiff and Class Member's impoverishment because of Defendant's failure to pay its employees for all time its employees were working at Defendants' direction.

173.    Defendants were aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

174.    Defendants' acceptance and retention of the benefit of the employees' unpaid labor was unjust and inequitable and resulted in Defendants being unjustly enriched.

175.    There is no justification for Defendants having failed to pay their employees for all time its employees performed work at Defendants' direction.

//

23

## **PRAYER FOR RELIEF**

1

2       WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,

3   seeks the following relief:

4       A.      A declaration that Defendants are joint employers of Plaintiff and the Class

5   Members;

6       B.      A declaration that Defendants have violated and are violating the FLSA;

7       C.      A declaration that Defendants have violated and are violating Arizona's

8   Wage Act;

9       D.      A declaration that Defendants have violated and are violating the Arizona

10  Minimum Wage Act;

11      E.      A declaration that Defendants have violated and are violating the Arizona

12  Fair Wages and Healthy Families Act;

13      F.      A declaration that Defendants have been unjustly enriched;

14      G.      A declaration that Defendants' statutory violations were willful;

15      H.      Injunctive and equitable relief requiring Defendants to comply with the

16  requirements of the FLSA, AWA, AMWA, and Arizona Fair Wages and Healthy Families

17  Act and to adjust all employee records and pay all amounts due and owing accordingly;

18      I.      Awarding Plaintiff and Class Members straight time wages, minimum

19  wages, overtime wages, and earned sick time due to them for their hours worked without

20  proper compensation by Defendants;

21      J.      Awarding Plaintiff and Class Members statutory, compensatory, and

22  liquidated damages, appropriate statutory penalties, and treble damages, to be paid by

23  Defendants;

24      K.      Awarding Plaintiff and Class Members' attorneys' fees and costs of suit

25  under the FLSA, the Arizona Minimum Wage Act, the Arizona Fair Wages and Healthy

26  Families Act and/or the common fund theory;

27      L.      Ordering Defendants to disgorge the value of their ill-gained benefits to

28  Plaintiff and all similarly situated employees;

M.      Awarding Plaintiff and Class Members pre-judgment and post-judgment interest as provided by law;

N.      That, at the earliest possible time, Plaintiff be allowed to give notice to the FLSA Collective, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as chauffeur drivers or similarly situated positions. Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

O.      Certification of Count I as an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

P.      Certification of Counts II, III, IV, and V as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

Q.      Designations of Named Plaintiff McGhee as a representative of the Rule 23 Class, and the law firm of Martin & Bonnett, PLLC as Class Counsel;

R.      A reasonable service award for Plaintiff McGhee to compensate him for the time spent attempting to recover wages for the Class and for the risks he took in doing so; and

S.      Any other relief as the Court deems fair and equitable or to which Plaintiff and Class Members are entitled.

Respectfully submitted this 29th day of November, 2024.

**MARTIN & BONNETT, P.L.L.C.**

By: s/ Daniel L. Bonnett
    Daniel L. Bonnett
    Michael M. Licata
    4647 N. 32nd Street, Suite 185
    Phoenix, AZ 85018

*Attorneys for Plaintiff and the putative FLSA Collective and Class*