**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William McGhee, et al., | No. CV-24-03394-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| J.E.T. Limousines & Transportation LLC, et al., | |
| Defendants. | |

The Court now considers Defendant J.E.T. Limousines & Transportation, LLC's (JET) Motion to Disqualify Counsel (Doc. 196). The Motion is fully briefed. Oral argument was scheduled for June 2, 2026. However, after review of the pleadings, the Court finds that oral argument would not be helpful and the hearing will be vacated. For the following reasons, the Court **denies** the Motion.

## I.   BACKGROUND

This case involves drivers asserting wage claims against transportation service companies, including JET. (*See generally* Doc. 59.) JET seeks to disqualify Plaintiffs' counsel Michael Licata, Daniel Bonnet, and their firm, Martin & Bonnett PLLC (collectively, "Counsel"), based on their interactions with FASTRAK Technologies ("FT"), a witness in this case. (Doc. 196 at 1.) FT provides software JET uses to track the work of its drivers, invoice its customers, and pay its drivers. (Doc. 196 at 1.) JET avers that Licata communicated with FT under the false pretense that he was interested in purchasing FT's software and services. (*Id.* at 3.) JET contends as follows.

In September 2025, Licata emailed FT asking: "Can the trip records be exported to include per trip compensation?" (*Id.* at 4; Doc. 196-1 at 12.) Jessi, an FT customer service representative, responded by asking: "What company are you with and what report are you trying to run?" (Doc. 196 at 4; Doc. 196-1 at 12.) Licata responded: "Hi, trying to figure out if the compensation reports exportable from Fasstrack [sic] can be linked up to the trip record associated with the trip. I am doing research on reservation systems." (Doc. 196 at 4; Doc. 196-1 at 13.) Licata sent a separate follow-up email stating: "I know this functionality exists for Santa Cruz, wondering if this is also feasible in Fasstrak [sic]." (Doc. 196 at 4; Doc. 196-1 at 12.) Santa Cruz is a competitor to FT. (Doc. 196 at 4.) Jessi responded by sending an example of a certain analysis report and a link to book a virtual meeting. (*Id.*; Doc. 196-1 at 11.) Licata used his personal email for this exchange and did not otherwise inform Jessi that he was an attorney or was connected to this case. (Doc. 196 at 4.)

Licata followed up in December, asking to schedule a call to discuss FT's capabilities. (Doc. 196 at 5; Doc. 196-1 at 16.) Jessi set up a virtual meeting which took place a few days later. (Doc. 196 at 5.) Licata informed Jessi that he was a lawyer at the beginning of the meeting and invited Bonnet to join the meeting. (*Id.*) During the meeting Jessi demoed FT under the impression Licata and Bonnet were starting a limo company. (*Id.*). At the end of the meeting, Licata and Bonnet requested a copy of the video, telling Jessi that they were "in litigation with one of your customers." (*Id.*) Thereafter, Counsel made various discovery demands of JET based on the information obtained about FT. (Doc. 196 at 5.)

Based on the foregoing, JET argues that Counsel should be disqualified.

## II.    LEGAL STANDARD

The Court applies Arizona law in evaluating motions to disqualify. *See In re City of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Disqualification is "an extreme remedy" and such "motions are subjected to strict scrutiny." *Enriquez v. Gemini Motor Transp. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 3565731, at *1 (D. Ariz. Aug. 12, 2021) (citation

modified). "The burden is on the party seeking to disqualify opposing counsel to demonstrate that disqualification is necessary." *Id.* (citation modified). "The moving party must show sufficient reason for the attorney to be disqualified." *Id.* (citation modified). In most cases, violating an ethical rule, without more, does not warrant disqualification. *See id.* "Indeed, the Preamble to the Arizona Rules of Professional Conduct states that a violation of an ethical rule 'does not necessarily warrant any other non-disciplinary remedy, such as disqualification of a lawyer in pending litigation.'" *Id.* (quoting Ariz. R. Sup. Ct. 42, pmbl. at 20). "In general, the rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel." *Id.* (citation modified).

Courts consider the following factors in determining whether disqualification is appropriate:

> (1) whether the motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Gomez v. Superior Court*, 717 P.2d 902, 905 (Ariz. 1986). "The central question in any disqualification inquiry is whether there will be harm, going forward in a case, from an attorney's representation of a client." D. *Stadtler Tr. 2015 Tr. v. Gorrie*, No. CV-22-00314-PHX-DWL, 2023 WL 355887, at *12 (D. Ariz. Jan. 23, 2023) (citation modified).

## III.    DISCUSSION

JET contends that Counsel violated Arizona Rules of Professional Conduct ("Rule") 4.1, 4.3, 7.1, and 8.4. These rules provide as follows:

> **Rule 4.1**: Prohibits attorneys from "mak[ing] a false statement of material fact or law to a third person."

> **Rule 4.3**: Provides that "[i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the

lawyer shall make reasonable efforts to correct the misunderstanding."

**Rule 7.1**: Prohibits lawyers from making false or misleading statements about themselves or their services. The Rule provides that a "communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

**Rule 8.4**: Provides that it "is professional misconduct for a lawyer to" violate the Rules or "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Even assuming Counsel violated these Rules, disqualification is not appropriate here. As indicated, disqualification is only appropriate where "there will be harm going forward." *Gorrie*, 2023 WL 355887, at *12. JET fails to establish that it will be subject to "substantial and irreparable harm" moving forward justifying disqualification. *See id.* (citation modified).

JET contends that is has been damaged based on Counsel's conduct because it "required that Defendants expend billable hours (i) determining the extent and details of Plaintiffs' counsel's conduct in connection with FASTTRAK; (ii) consulting with FASTTRAK to correct misstatements in Plaintiffs' counsel's demands related to invoices and trip records; and (iii) bringing this matter to the attention of the Court." (Doc. 196 at 13.) JET also asks this court to "consider the disadvantage JET will labor under going forward"; namely, that "Counsel will undoubtedly support a motion to compel by a declaration from Counsel—a declaration based on conversations with [Jessi] that occurred under false pretenses and outside the presence of JET's counsel." (*Id.* at 14.) Even if true, JET fails to establish the "extreme circumstances" necessary to disqualify counsel. *See State v. Creel*, 583 P.3d 438, 441 (Ariz. Ct. App. 2025).

At a general level, the Court is not convinced that JET expending billable hours to respond to Counsel's conduct is the type of harm indicating an extreme circumstance warranting disqualification. Resources are expended any time a motion is filed, and thus, cannot amount to an extreme circumstance justifying disqualification.

Moreover, the Court questions the extent to which JET had to incur additional

billable hours to respond to Counsel's conduct.  At face value, the information Counsel obtained through FT is relatively benign.  The alleged deceit aside, the September and December emails culminated in FT sending Counsel an example report, noting that if a company has "Driver Pay and other items in the trip upon close, it will appear in the appropriate column," and proposing to meet virtually.  (Doc. 196-1 at 11–15.)  In the meeting, Jessi testifies that she did a "demo" for Counsel and showed them "sample reports." (*Id.* at 8–9.)  At bottom, it appears that Counsel's alleged subterfuge only yielded general information regarding FT that is readily given out.  Nevertheless, the foregoing should not be understood as this Court condoning Counsel's conduct.  Instead, the Court is not persuaded that Counsel's conduct demanded an overwhelming response from JET.

The Court recognizes that Counsel's conduct required JET to expend billable hours to "determine[e] the extent and details Plaintiffs' counsel's conduct in connection with FASTTRAK." (Doc. 196 at 14.)  However, Counsel's interactions with FT are limited, including less than 10 short emails and a product demonstration meeting.  As can be seen in the email excerpts, only one of the emails included substantive information about FT. (*See* Doc. 196-1 at 11.)  The Court is not convinced that these interactions imposed on JET a burden justifying the extreme sanction of disqualification.  Additionally, given that evidence related to FT "is of central importance to this case," (Doc. 196 at 2), one would presume that JET would otherwise have to expend significant resources to address these issues raised by Counsel.  Indeed, it appears that Counsel raised similar challenges to the FT even before their interactions with Jessi.  (*See id.* at 2–3.)  Accordingly, JET fails to demonstrate that Counsel obtaining readily available and general information about FT exacerbated issues related to FT.

Then there is JET's concern that "Counsel will undoubtedly support a motion to compel by a declaration from Counsel—a declaration based on conversations with [Jessi] that occurred under false pretenses and outside the presence of JET's counsel." (*Id.* at 14.)  This concern is speculative.  Even still, it's unclear that this can be fairly categorized as a "damage" justifying disqualification.  Construed broadly, JET avers that Counsel's conduct

- 5 -

taints evidentiary issues related to the FT software. However, JET has not demonstrated how ordinary litigation tools such as discovery and other evidentiary mechanisms are ineffective to remedy any injury caused by Counsel in this matter. Instead, Counsel obtained general information about FT, which Counsel is seemingly using to color its discovery requests.

To be clear, the Court does not condone Counsel's behavior as an ethical matter. But not every ethical violation can serve as a basis for disqualification. *See Robbins v. United States*, No. CIV03-1224PCT-JAT, 2006 WL 359948, at *3 (D. Ariz. Feb. 14, 2006). However, the Court must view JET's Motion "with suspicion," in search of an "extreme circumstance" justifying disqualification. *Id.* For the reasons stated, JET fails to meet this exacting standard. The ethical issues at play in this case are better left to the State Bar of Arizona. At bottom, "[i]t is not this Court's role to impose sanctions for the ethical obligations imposed by, and policed by, the State Bar of Arizona." *Id.*

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED denying** JET's Motion to Disqualify Counsel (Doc. 196) and vacating oral argument scheduled for June 2, 2026.

Dated this 14th day of May, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge

- 6 -